IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY HUTCHINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 1:17cv112-WKW-GMB |
| ) | [WO] |
| SPECTRACARE HEALTH SYSTEMS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**<u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for further proceedings and determination or recommendation as may be appropriate. Doc. 7.  Plaintiff Kimberly Hutchins, proceeding *pro se*, filed this action on February 24, 2017, asserting claims in connection with the denial of Family Medical Leave Act ("FMLA") leave and race discrimination and retaliation in her employment. Doc. 1.[1]  Now before the court is the Motion for Summary Judgment filed by Defendant SpectraCare Health Systems, Inc. ("SpectraCare"). Doc. 18.  After careful consideration of the parties' submissions,[2] the applicable case law, and the record as a

---

[1] Hutchins also refers in her complaint to discrimination on the basis of social status, but social status is not a protected classification under Title VII, and summary judgment is due to be GRANTED on that claim. *See* 42 U.S.C.A. § 2000e-2 (stating that it is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").

[2] Hutchins has submitted a response brief, but no evidence.  She states in her response brief that a trial is necessary for witnesses to be heard. Doc. 20 at 9.  As set out in a previous order of this court, failure to follow the requirements of Federal Rule of Civil Procedure 56 regarding the proper way to oppose a motion for summary judgment may result in a grant of the motion and final judgment in favor of the moving party without a trial. Doc. 19.

whole, the undersigned RECOMMENDS that the motion for summary judgment be GRANTED.

## I.  JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the federal claim in this action pursuant to 42 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (internal quotation marks omitted).  If the nonmoving party's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249−50 (1986) (citations omitted). "However, disagreement between the parties is not significant unless the disagreement presents a genuine [dispute] of material fact." *Gamble v. Pinnoak Resources, LLC*, 511 F. Supp. 2d 1111, 1122 (N.D. Ala. 2007) (internal quotation marks omitted). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a district court considers a motion for summary judgment, all evidence and inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). "The court must avoid weighing conflicting evidence or making credibility determinations. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Gamble*, 511 F. Supp. 2d at 1122 (internal quotation marks omitted). "Where a reasonable fact finder may draw more than one inference from the facts, then the court should refuse to grant summary judgment." *Id.* (internal quotation marks omitted).

### III.  STATEMENT OF FACTS

The facts viewed in the light most favorable to the nonmovant are as follows:

Hutchins was employed with SpectraCare, which is a non-profit corporation that provides mental health, intellectual disability, and substance abuse services. Hutchins began working at SpectraCare in June 2013. When her employment ended in December 2015, she was a Day Treatment Director.

The written job description for Hutchins provided by SpectraCare lists eight primary

job functions and performance expectations. Doc. 17-7. These include managing the day treatment program, managing the financial aspects of the program, supervising the day treatment staff, providing therapeutic services, maintaining client records, serving as part of the emergency services staff including crises services, other duties including transportation, and regular attendance with timely arrival and departure according to scheduled hours. Doc. 17-7.

In her brief in response to the motion for summary judgment, Hutchins states, without citation to any supporting evidence, that 75% of her job function was to perform the duties of day treatment groups, complete assessments of new intakes, and the renewal of current treatment plans. Doc. 20 at 5. She also states in her brief, however, that it was "known that some leadership roles were part of my job functions but not my full job function." Doc. 20 at 5. In her deposition, she testified that leadership was an essential function of her job. Doc. 17-1 at 126.

In May 2015, a complaint was raised about Hutchins' work performance. In June 2015, Hutchins received a Step II Plan under SpectraCare's progressive discipline program in response to the May 2015 complaint. Hutchins testified in her deposition that she was not at work when the incident resulting in the Step II Plan occurred and that she was blamed for the incident because of her race. Hutchins wrote a rebuttal to the Step II Plan. Susie Kingry, Chief Operations Officer of SpectraCare, and Laura Deal, Chief Human Resources Officer, met with Hutchins about her rebuttal on July 8, 2015, and informed her that the disciplinary action would not be retracted.

Hutchins filed a grievance with SpectraCare on June 29, 2015 in which she

identified perceived mistreatment based on the Step II Plan and her meeting with Deal and Kingry. In her grievance, she stated that she did not receive fair treatment in that she and other therapists engaged in the same behavior, but only she was disciplined for it. Doc. 17-5.

Hutchins was issued a Step II Addendum on August 11, 2015. Hutchins did not lose pay or benefits as a result of the Step II Plan or the Step II Addendum.

Hutchins contends in her brief that the discipline she received caused her to experience problems with blood pressure, depression, anxiety, and fibromyalgia. On August 17, 2015, Hutchins requested FMLA paperwork. Hutchins' doctor completed the paperwork and indicated on the form that Hutchins was unable to perform a job function. Doc. 17-2 at 4. Specifically, the doctor stated that Hutchins was unable to function in a leadership role due to the symptoms of her diagnosed conditions. Doc. 17-2 at 4.

Hutchins subsequently met with Deal and Kingry. Kingry informed Hutchins that she would be given FMLA leave until she could perform leadership responsibilities. Doc. 17-7 at 5. Hutchins went on FMLA leave in September 2015. She never provided follow-up paperwork to show that she could meet the essential functions of her job and would be capable of returning to work.

On December 1, 2015, SpectraCare sent a letter to Hutchins informing her that her FMLA leave was exhausted and that SpectraCare would not be able to continue to hold her position because her physician indicated a need for Hutchins' continued absence with an uncertain return date. Doc. 17-4.

5

## IV. DISCUSSION

**A.     Race Discrimination and Retaliation Claims**

Hutchins' complaint states that she was discriminated against on the basis of race and that she was retaliated against after her rebuttal of the Step II Plan and grievance against employees of SpectraCare. Doc. 1 at 2. SpectraCare has moved for summary judgment on these claims on multiple grounds, including the timeliness of the EEOC Charge and the failure to establish a claim of discrimination.

### *1.     Exhaustion of Remedies*

Before a plaintiff may sue for race discrimination or retaliation under Title VII, she must first exhaust her administrative remedies. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). The first requirement is that the employee must file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.*; 42 U.S.C. § 2000e-5(b). For a charge to be timely in a non-deferral state such as Alabama, it must be filed within 180 days of the last discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1).

Hutchins' EEOC charge was filed on March 28, 2016. Doc. 1 at 3. The 180-day period preceding that charge date commenced on September 29, 2015. SpectraCare contends, therefore, that all claims by Hutchins based on disciplinary actions taken against her are time-barred.[3]

---

[3] In her response brief, Hutchins posits that if her EEOC Charge was untimely, the EEOC would not have completed an investigation and granted her a right to sue. Hutchins has misinterpreted the circumstances under which the EEOC issues a notice of rights, however. No matter its finding, even when the EEOC finds that it is not reasonable to believe that an unlawful employment practice occurred, the EEOC is required to inform the charging person that she has a right to sue within 90 days of the receipt of the letter

6

Hutchins' complaint identifies the date of alleged discrimination as "May 2015–December 2015." Doc. 1 at 2.  While she has pleaded a range of dates, individual acts each must fall within the 180-day period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (explaining that while the plaintiff "alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable").  In other words, discrete acts which occur more than 180 days before the filing of the EEOC charge are time-barred even when they are related to acts that fall within the 180 days. *Id.* at 112.

The June 2015 Step II Plan and the August 2015 Step II Addendum occurred outside of the 180 days before Hutchins filed her EEOC charge.  Therefore, race discrimination or retaliation claims based on those actions are time-barred and summary judgment is due to be GRANTED as to claims based on those acts. *See Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000).

Two other potential claims, however, are not governed by this time-bar analysis.  Hutchins was terminated on December 1, 2015.  Her termination date falls within the applicable 180-day period before her EEOC charge, so potential race discrimination or retaliation claims arising from her termination are not time-barred.  The court will address the merits of those potential claims below.

---

from the EEOC. 29 C.F.R. § 1601.19 (a).  In this particular case, the Dismissal and Notice of Rights letter states that the EEOC is closing the file because it "is unable to conclude that the information obtained establishes violations of the statutes." Doc. 1-1.

Hutchins also states in her complaint that she was harassed after she completed her rebuttal and grievance. Doc. 1. Hutchins' harassment theory is unclear, but in her brief she explains that, after she filed a rebuttal against the Step II disciplinary action, she was called to a meeting and "[a]t that point, retaliation was set forth." Doc. 20 at 6. She then describes actions taken by SpectraCare employees before receiving the Addendum to the Step II action. Doc. 20 at 6.

To the extent that her complaint could be construed as stating a retaliatory harassment claim under Title VII, its timeliness is evaluated under a separate time-bar analysis. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

The court will assume for purposes of analysis that Hutchins' rebuttal or grievance sufficiently identified a complaint of race discrimination so as to be considered protected activity. Hutchins points to disciplinary actions in her brief beginning in May 2015, but only evidence of discipline or other alleged retaliation that took place after Hutchins' protected activity is relevant to her claim. *See Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) (stating that a plaintiff must show that the adverse act followed the protected conduct). Considering Hutchins' description of her claim and the evidence presented by SpectraCare, it appears to the court that the August 2015 Step II Addendum is the latest of the identified disciplinary actions that followed Hutchins' rebuttal. And even the August 2015 Step II Addendum did not occur within 180 days before the EEOC

charge.[4] Accordingly, there is no timely retaliatory harassment claim and summary judgment is due to be GRANTED as to that claim.

### 2. *Claims Arising from Hutchins' Termination*

While claims for race discrimination and retaliation arising from her termination would not be time-barred, Hutchins' complaint does not appear to allege that her termination was based on race or in retaliation for a complaint of race discrimination. In her brief, she states that she claims race discrepancies in "severe disciplinary actions." Doc. 20 at 6–7. Out of an abundance of caution, however, the court will analyze these claims pursuant to the analysis that applies under Title VII.

Pursuant to the applicable framework for race and retaliation disparate treatment claims, Hutchins must first establish a *prima facie* case. *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). "If a plaintiff makes the requisite showing, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1174. Finally, if the employer meets this burden, the plaintiff must demonstrate that the proffered reason is merely a pretext for unlawful discrimination or retaliation. *Id.*

Hutchins has not adequately established a *prima facie* case because she has not shown that a similarly-situated person outside of her protected class was not terminated

---

[4] Hutchins does not appear to claim that her termination was part of this theory, and as will be discussed more fully below her termination was based on her exhausted leave, not her disciplinary record. However, if Hutchins had intended to claim that her termination was harassment in retaliation for a complaint of race discrimination, then the harassment claim would not be time-barred because the termination is within the 180 days before the EEOC charge.

under similar circumstances. *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (stating that a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class).

Furthermore, whether analyzed as part of the *prima facie* case[5] or in the context of a pretext analysis, the unrefuted evidence before the court is that Hutchins was terminated because her FMLA leave was exhausted, and she has not pointed to any evidence to undermine that reason. *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (stating that to avoid summary judgment the plaintiff must introduce significantly probative evidence showing that the asserted reason is a merely a pretext for discrimination by showing that the reason was false and discrimination is the real reason).

Finally, if Hutchins' termination is alleged to have been part of retaliatory harassment, that claim is analyzed using the same standard as that used to determine whether an employee has experienced a hostile work environment. *Gowski v. Peake,* 682 F.3d 1299, 1311–12 (11th Cir. 2012). Under that analysis, the retaliatory harassment has to rise "to a level which an objectively reasonable person would find to be sufficiently

---

[5] SpectraCare takes the position that Hutchins' termination cannot be considered an adverse employment action under Title VII, citing *Barnett v. Athens Reg'l Med. Ctr. Inc.,* 550 F. App'x 711, 714 (11th Cir. 2013) (finding there was no adverse employment action where employee was terminated "under medical resignation, and no evidence showed that Barnett's separation occurred for any reason other than his exhaustion of Family Medical Leave Act ('FMLA') and non-FMLA leave and the indeterminacy of his return.").

severe and pervasive so as to alter the terms and conditions of her employment and create a hostile or abusive working environment." *Id.* As discussed earlier, only actions following her arguably protected activity are relevant to this claim. *See Griffin*, 182 F.3d at 1284. Considering together the Addendum to Plan II and the termination, the court cannot conclude that the standard for retaliatory harassment has been met. *See id.* at 1312 (stating "discrete acts cannot alone form the *basis* of a hostile work environment claim.") (emphasis in original).

Accordingly, even if race discrimination or retaliation claims based on Hutchins' termination have been brought in this case, summary judgment is due to be GRANTED on those claims.

**B.      FMLA Claim**

"The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014) (citations omitted). To establish an interference claim, an employee has to demonstrate by a preponderance of the evidence that she was entitled to the benefit denied. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).

In this case, Hutchins took 12 weeks of FMLA leave, but she contends that SpectraCare violated the FMLA by not allowing her to take intermittent FMLA leave. Federal regulations allow for FMLA leave to be taken intermittently or on a reduced leave schedule under certain circumstances. 29 C.F.R. § 825.202(a). An employee, however, is

not entitled to the benefit of intermittent leave if she cannot perform her job functions. *See Gillman v. Okaloosa Cnty. Fla.*, 58 F. Supp. 3d 1305, 1310 (N.D. Fla. 2014). Additionally, an employer does not have an obligation under FMLA to place an employee in a different position at the termination of FMLA leave. *See* 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.").

The Eighth Circuit Court of Appeals has examined the purpose of intermittent FMLA leave. *See Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 676 (8th Cir. 2001). In *Hatchett*, the employee could perform some functions of her job, but not all, and claimed that she was entitled to intermittent FMLA leave while she progressed in her recovery. The Eighth Circuit examined the legislative history of the FMLA and noted that the legislative history addresses a situation involving an employee who must periodically leave work for medical supervision so that the employee is deemed to be temporarily unable to perform the functions of the job only when away from work. *Id.* The court also considered the statute's restoration provisions, including the provision that an employee only is entitled to be returned to the same position the employee held when leave commenced. *Id.* The court held that the legislative history of the FMLA and the statute's restoration provisions demonstrate that an employee who could not otherwise perform the essential functions of her job, apart from the inability to work a full-time schedule, is not entitled to intermittent or reduced schedule leave. *Id.*; *see also Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 860

n.3 (5th Cir. 2010) (stating that an employee is not entitled to intermittent leave if he cannot perform the essential functions of his job when he is present).

Other courts also have determined that the FMLA should not be read as allowing "unscheduled and unpredictable, but cumulatively substantial, absences." *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1007 (7th Cir. 2001).

In this case, SpectraCare points to evidence demonstrating that Hutchins could not perform the essential functions of her job. It is undisputed that Hutchins' FMLA paperwork completed by her doctor states that "[s]he is unable to function in a leadership role" due to symptoms of her diagnosed conditions. Doc. 17-2 at 3. The form also states that it is possible that Hutchins will experience episodic flare-ups which will periodically prevent her from performing her job functions. Doc. 17-2 at 4.

As to the issue of whether leadership is an essential function of the position, Kingry states in her affidavit that it "is impossible for a Day Treatment Director to not provide constant leadership among the clients and staff." Doc. 17-6 at 5. She states that Hutchins' job required her to handle stressful situations. Doc. 17-6 at 5. Deal also states in an affidavit that leadership was an essential function of Hutchins' job, and in fact one of the most critical aspects of the job. Doc. 17-7 at 5.

Hutchins affirmatively testified in her deposition: "I did have leadership responsibility." Doc. 17-1 at 82:11–12. She also agreed in her deposition that leadership was not her only job function, but it was an essential function of her job. Doc. 17-1 at 126:12–21. The court cannot conclude, therefore, reviewing the submissions of the parties and the record as a whole, that there is a genuine issue of fact on this point. Rather, the

13

evidence is unrefuted that leadership was an essential function of Hutchins' position.

According to her doctor, Hutchins could not perform a leadership role, an essential function of her job, while she was at work. Hutchins' claim is that she was denied the ability to use intermittent FMLA leave when her symptoms impaired her while she was at work. As she stated in her deposition, she wanted to be allowed to apply FMLA leave if she "became so anxious that at two o'clock in the afternoon, [she] asked to get off work a couple of hours early." Doc. 17-1 at 80:16–19. The FMLA does not provide for intermittent leave under those circumstances. *See Hatchett*, 251 F.3d at 676. Accordingly, denial of FMLA intermittent leave was not a denial of a benefit to which Hutchins was entitled. *See Gillman*, 58 F. Supp. 3d at 1310. Summary judgment is due to be GRANTED as to the FMLA claim.

**C.    ADA Claim**

In her response brief, Hutchins refers to a "violation of the ADA," apparently invoking the Americans With Disabilities Act as a basis for relief in this case. Doc. 20 at 8. She does not cite the ADA or refer to any of its provisions in her complaint, however. SpectraCare's position is that there is no ADA claim in this case. The court agrees that invoking the ADA for the first time in response to the motion for summary judgment is not appropriate. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint. The proper procedure for [Plaintiff] to assert a new. . . claim was to seek to amend her complaint.").

Even if the court were to consider Hutchins' complaint as asserting an ADA claim,

14

however, the court cannot conclude that Hutchins has established a claim recognized under the law.

The ADA requires an employer to provide reasonable accommodations for employees with known disabilities unless the accommodations would result in undue hardship to the employer. *See Morisky v. Broward Cnty.*, 80 F.3d 445, 447 (11th Cir. 1996). An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

In this case, Hutchins appears to state that her FMLA leave should have been granted intermittently as a reasonable accommodation of a disability. In explaining the leave she sought, she states in her response brief that she could have remained on the job if she had been allowed to leave when she needed to, and if her employer had disbursed "some of [her] duties to other employees for a short period of time." Doc. 20 at 8.

In *Earl*, the Eleventh Circuit analyzed a similar ADA claim where "the only 'accommodation' the plaintiff identified was to allow her to clock in at whatever time she arrived, without reprimand, and to permit her to make up the missed time at the end of her shift." 207 F.3d at 1367. The court explained that in determining what functions are deemed essential, the ADA states "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* at 1365 (citing 42 U.S.C. § 12111(8)). Timely presence was an essential function of the employee's job in that case. *Id.* at 1367. The court held that the

plaintiff had not met her burden of identifying a reasonable accommodation because an employer "is not required by the ADA to reallocate job duties in order to change the essential functions of a job." *Id.*

As previously discussed, Hutchins' doctor said that she could not perform leadership, an essential function of her job. Hutchins claims that she should have been allowed to take intermittent leave and that SpectraCare could have disbursed some of her duties. That identified accommodation is squarely within the type of accommodation prohibited under *Earl*. This court concludes, therefore, that even if the complaint could be construed to state an ADA reasonable accommodation claim, that claim cannot proceed to trial as a matter of law, and summary judgment is due to be GRANTED.

## V.  CONCLUSION

For the reasons stated above, the undersigned Magistrate Judge RECOMMENDS that the motion for summary judgment (Doc. 17) be GRANTED.

It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than July 23, 2018**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation

and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 9th day of July, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE